UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SCOTT PHILLIP LEWIS,<br>*Plaintiff*,<br><br>v.<br><br>State of Texas; Williamson County, Texas; City of Austin; Big Fish Entertainment<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>Jury Trial Demanded<br><br>1:24CV00461 ADA |

FILED
APR 25 2024
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES PLAINTIFF, Scott Phillip Lewis, and files Plaintiff's Original Complaint. Plaintiff files this 42 U.S.C. § 1983, 42 U.S.C § 1985(3) and Texas Torts Act lawsuit for cause of action will show the following:

### I. PARTIES

1. Plaintiff is Scott Phillip Lewis ("Plaintiff"), an individual and citizen of the United States of America.

2. Defendant #1 is the State of Texas, a State within the United States of America bound to follow the Constitution of the United States of America and its laws and can be served through its Attorney General Ken Paxton at 300 W. 15th Street, Austin, TX 78701.

3. Defendant #2 is Williamson County, Texas is a county in the State of Texas and can be served through Bill Gravel, County Judge, at 710 S Main St, Georgetown, TX.

4. Defendant #3 is the City of Austin is a city located in Travis County, Texas and can be served through Myrna Rios, City Clerk, at 301 W. Second St. Suite 2030 Austin, TX 78701.

5. Defendant #4 is Big Fish Entertainment, LLC describes itself as a "content production company" and can be served through its Chief Executive Officer, Dan Cesareo, at 100 Park Avenue, 20th Floor, New York, NY.

6. Service is requested contemporaneously with the filing of the complaint.

## II. JURISDICTION AND VENUE

7. The court has jurisdiction over this lawsuit according to 28 U.S.C § 1331.

8.. Venue is correct according to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III. FACTUAL ALLEGATIONS

9. Plaintiff's relationship with chronic pain begins in 2012. At this time, Plaintiff had their left wrist severely broken, requiring a fixation with screws and plates used to piece the arm back together. Surgery was performed at Upstate Orthopedics in East Syracuse, New York. After surgery, Plaintiff was prescribed Oxycontin, a pain killer known for its high risk for addiction and dependence. Oxycontin was originally advertised as not being addictive by distributors such as Purdue Pharmaceuticals located in Stamford, Connecticut.

10. The Johns Hopkins Medicine website explains "[w]hen pain becomes such a problem that it interferes with your life's work and normal activities, you may become the victim of a vicious circle. Pain may cause you to become preoccupied with the pain, depressed, and irritable. Depression and irritability often leads to insomnia and weariness, leading to more irritability, depression, and pain."
https://www.hopkinsmedicine.org/health/conditions-and-diseases/chron ic-pain#:~:text=Pain%20may%20cause%20you%20to,suffering%2C%20sleeplessness%2C %20a nd%20sadness).

11. By 2013, Plaintiff had noticed changes in life's work and normal activities because of the constant chronic pain in the left wrist. By May 2014, Plaintiff made the choice to remain abstinent from alcoholic beverages as the chronic pain mixed with alcohol had become an

unpleasant experience with irritable behavior becoming more frequent. Shortly after making this choice, Plaintiff was hired as a Derivatives Trading Specialist at optionsXpress by Charles Schwab and JV Lacrosse Coach at Vandegrift High School in Austin, TX. Plaintiff moved from Syracuse, New York.

12. In November 2015, Plaintiff was involved in a hit and run accident on Rainey Street in Austin, Texas leaving Plaintiff with a concussion and traumatic brain injury (TBI). The police who were involved never followed up with Plaintiff, seemingly attempting to cover up what happened.

13. After the 2015 hit and run incident, Plaintiff experienced a progressive increase in attention-deficit/hyperactivity disorder ("ADHD") symptoms associated with the post-traumatic stress disorder ("PTSD") from the accident and lack of police professionalism, follow up and transparency.

14. After the progression of symptoms of PTSD and ADHD from the 2015 hit and run accident, Plaintiff had developed an alcohol abuse disorder over time. While some could see the alcohol abuse, the root cause of the symptom went undiagnosed for a very long time. Even though Plaintiff understood the symptoms he was experiencing, Plaintiff was bombarded with conflicting opinions by individuals who did not care about the full truth, but instead focused on selective facts that best fit a desired narrative and bias.

15. Again symptoms of PTSD and ADHD were further exacerbated on or around July 2018 when a former roommate and also a coach at Vandegrift Lacrosse Club told Plaintiff he had paid money to have a man killed over a disagreement in a lacrosse game. Stunned by such evil, Plaintiff experienced an even further increase in ADHD and PTSD symptoms and separately, an increase in alcohol abuse, which is a symptom of PTSD and ADHD.

16. Plaintiff made the choice to go to "A Forever Recovery," a rehabilitation facility in Battle Creek, Michigan. Plaintiff knew this was not a good fit, almost immediately, as the facility wanted to focus solely on the alcohol abuse and not the reasons that caused such a symptom. Plaintiff felt as if they were at a cult and made the decision to leave after approximately twelve (12) days. This experience affected Plaintiff's overall well-being. "A Forever Recovery" is now believed to be permanently closed.

17. On January 25, 2019, Plaintiff was arrested for driving while intoxicated in Williamson County, TX. Selective, manipulated and edited portions of the arrest were broadcast to over a million viewers on a television show advertising the edited arrests they were broadcasting as "unfiltered and unfettered," when in fact, it was not.

18. This show was called "LivePD," a hit television show that used law enforcement as law entertainment. If an arrest was standard, or otherwise lawful, it was less likely to be shown on television. Serious police interactions were instigated for ratings.

19. "LivePD" was broadcast on a cable television network owned and operated by A&E Television Networks, LLC. A&E Television Networks, LLC is a joint venture owned by The Walt Disney Company and Hearst Corporation. "LivePD's" production company was Big Fish Entertainment. Big Fish Entertainment is owned by Metro-Goldwyn-Mayer Inc. Plaintiff was employed by Vandegrift Lacrosse Club Booster Organization and Charles Schwab at the time of the conspiracy and arrest.

20. Those susceptible of mental health symptoms or physical ailments, such as Plaintiff, were more vulnerable for mistreatment and being broadcast on the television show.

21. Two months after Plaintiff's "LivePD" arrest, Javier Ambler was tased to death for not dimming his headlights while "LivePD" cameras filmed. Ex-Williamson County Sheriff

Robert Chody and attorney Jason Nassour have been indicted for tampering with evidence regarding the destruction of evidence at the crime scene of Javier Ambler's death.

22. The shockingly unconscionable and unconstitutional show "LivePD" was subsequently canceled in June 2020. Those responsible for conspiring to violate individuals Constitutional rights, such as Plaintiff's, in order to enrich themselves have yet to be held accountable.

23. Plaintiff suffered an anxiety attack when learning upon the non-consensual broadcast of the arrest and had his left shoulder broken by Williamson County Jail Staff as a result of the panic attack. Plaintiff was then strapped to an immobilized chair for hours, having his blood drawn while strapped to a chair with a broken shoulder for suffering an anxiety attack.

24. The criminal charges associated with Plaintiff's driving while intoxicated arrest were dismissed for insufficient evidence on or around April 25, 2022, over three (3) years after the "LivePD" arrest. Plaintiff filed a 42 USC § 1983 against Williamson County, TX in January of 2021 (Exhibit B). Plaintiff hereby explicitly incorporates Exhibit B in this pleading pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

25. The show that advertised itself as "unfettered and unfiltered" police action "happening live" was actually pre-filmed constitutional violations that were edited and manipulated.

26. It is anticipated that Defendants will try to label the airing of these prior arrests as "newsworthy." However, Plaintiff vigorously asserts that selecting edited portions of an unlawful arrest while using an individual's name, image and likeness without authorization in order to maximize ratings is a laughable characterization of the news.

.27. Defendants feasted on the rights of those with mental impairments and disabilities. During dangerous police encounters, law enforcement officers were often incentivized to escalate conflict in order to create entertaining television instead of making lawful arrests.

28. "LivePD" was not the news. It was a disgusting excuse for a television show that capitalized on human weakness in order to maximize profits while knowingly fooling its viewership into believing what they were watching was happening in real time.

29. A better name for the television show would have been "LyingPD."

## CLAIMS

### 1. 42 USC § 1983 14th Amendment against the City of Austin

30. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein and alleges as follows.

31. "{M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies." (*Monell v. Department of Social Services of City of New York,* 436 U.S. 3 658, 690 (1978)). "It is the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id at 691.

32. To state a claim under Section 1983, a plaintiff must: "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013).

33. Claims under Section 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

34. On the night of the previously mentioned hit and run accident, the City of Austin Police and EMS took over an hour to show up at the scene of the accident. Plaintiff was concussed and

full of adrenaline after breaking a windshield with their head.

35. Plaintiff went to First Choice Emergency Room on Jollyville Rd. in Austin, TX. Plaintiff received a CT scan and was given a prescription after being diagnosed with a concussion.

36. On the night of the accident Plaintiff went back into The Milago at 54 Rainey Street to retrieve witnesses to speak to police, which was Chris Bocklet, a lacrosse coach at Westlake High School in Austin, Texas and upon information and belief, a woman with the last name Keel, who was also a lacrosse coach at Westlake High School in Austin, Texas.

37. Not only is Plaintiff not included in the accident report but the witnesses that Plaintiff went into the building to get to talk to police are not involved in the report as well.

38. The Fourteenth Amendment in part states "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

39. Here, the public is entitled to public information, such as an accident report.

40. When Plaintiff was left out of the accident report and not followed up with, a fourteenth amendment violation took place.

41. Plaintiff has the privilege of being in an accident report they were part of and for the report to include witnesses as well.

42. When Plaintiff was left out of the accident report, it created a false narrative that Plaintiff was just "making things up."

43. Painting Plaintiff as a compulsive liar was the goal.

44. If any family member, friend or community member filed an Open Records Request regarding the accident described by Plaintiff, nothing would be found. This is by design. The goal was to discredit Plaintiff by concussing him and then leaving what happened out of the accident report in order to create a false narrative that Plaintiff is a compulsive liar.

45. City of Austin Police had the opportunity to complete a proper accident report, follow up with Plaintiff and conduct a proper investigation. City of Austin Police did not make the choice to do this.

46. Plaintiff requests all relief and damages he may be entitled.

### 2. Williamson County, Texas; City of Austin, Big Fish Entertainment § 1985(3) - Conspiracy to violate Plaintiff's Sixth Amendment Right to A Public and Speedy Trial

47. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein and alleges as follows.

48. The Sixth Amendment states in full

> "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

49. Article 1, Section 10 of the Texas Constitution, guarantees an accused the right to a speedy trial stating

> "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself† and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense.† unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penetentiary, in cases of

> impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.

50. Here, Plaintiff's arrest occurred on January 25, 2019 and trial commenced on April 25, 2022, one thousand and eighty six (1,186) days later.

51. This would be the opposite of a speedy trial.

52. Plaintiff hired four attorneys to get to the trial in which charges were subsequently dismissed after seating a jury for insufficient evidence.

53. Plaintiff was very clear that he intended to exercise his sixth amendment right to a jury trial in March 2019 when BRETT H. PRITCHARD, P.C ("Brett Pritchard") was hired. Plaintiff was led to believe civil action would be taken by Brett Prichard as well. It was only until Plaintiff signed a contract that Brett Prichard let Plaintiff know that they didn't take personal injury cases.

54. Plaintiff was deceived while cognitively impaired.

55. Later in 2019, Plaintiff asked Brett Pritchard to withdraw after Plaintiff was pressured to sign a plea deal.

56. Plaintiff simply wished to exercise their constitutional rights.

57. Next, Dax Garvin was hired. The same result occurred. Plaintiff was very clear up front that their intention was to go to a jury trial. Dax Garvin withdrew from the case after pressuring Plaintiff to sign a plea deal. When Plaintiff refused, Dax Garvin attempted to paint Plaintiff as mentally incapable of standing trial during his withdrawal hearing.

58. Next up was Chris Osborn Law, P.C ("Chris Osborn"). Again, Plaintiff was clear about the intentions to go to trial up front. Again, Plaintiff was pressured into signing a plea deal before Chris Osborn withdrew.

59. Before withdrawing, Williamson County Court of Law Judge Laura Barker gave improper instructions to Plaintiff's attorney, Chris Osborn. Plaintiff filed a lawsuit for damages stemming from the misconduct (Exhibit D).

60. The pattern that developed was very clear. Up front, all attorneys took a payment with promises but then failed to deliver on the promises. The promise being made was exercising Plaintiff's constitutional right to a jury trial.

61. All three law firms previously mentioned changed course during Plaintiff's representation into attempting to trick, coerce or pressure Plaintiff into a plea deal.

62. Upon information and belief, the attorneys listed became compromised and were not interested in defending their clients constitutional rights.

63. The pressure was from what can be called "the court of public opinion." This was a pressure campaign done by conspirators to discredit Plaintiff and stop Plaintiff from going to trial at all costs. A jury trial would expose the truth and Defendants knew this.

64. A public trial is what the State of Texas, Williamson County, the City of Austin and Big Fish Entertainment wanted to avoid.

65. State of Texas, Williamson County, the City of Austin and Big Fish Entertainment are conspirators to try this case in the "court of public opinion" than allowing Plaintiff to exercise his constitutional rights.

66. On April 25, 2024, Plaintiff's DWI charges were dismissed at trial for insufficient evidence.

67. Plaintiff was not confronted with any witnesses. Defendants conspired to violate Plaintiff's sixth amendment rights in an attempt to win in the "court of public opinion" by spreading falsifications and lies.

68. Plaintiff requests all relief and damages he may be entitled.

## TEXAS TORT ACTS CLAIMS

69. In the alternative, without waiving any of the other claims pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all allegations in the "Factual Allegations" section above) to the extent they are not consistent with the cause of action pled here, the State of Texas, Williamson County, Texas and City of Austin are liable to Plaintiff claims pursuant to the Texas Tort Claims Act.

### Intentional infliction of emotional distress - City of Austin
### Leaving Plaintiff out of police report

70. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein and alleges as follows.

71. The elements for Intentional Infliction of Emotional Distress are Defendant(s) acted intentionally or recklessly 2.) The Defendant's conduct was extreme and outrageous 3. The defendant's actions caused the Plaintiff emotional distress.

72. Here, City of Austin police intentionally left Plaintiff out of the accident report intentionally. Falsifying public records is conduct that is extreme and outrageous, or otherwise shocking. City of Austin's conduct caused post-traumatic stress disorder in Plaintiff.

73. Plaintiff experienced flashbacks, an increase in anxiety, a decrease in cognitive functioning and other difficulties in major life activities as a result of the City of Austin's conduct.

74. Plaintiff requests all relief and damages he may be entitled.

### Intentional Infliction of Emotional Distress
### Denying Plaintiff his Constitutional right to the Sixth Amendment

75. Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein and alleges as follows.

76. Here, the State of Texas, Williamson County, TX and the City of Austin ("Government Defendants") engaged in intentional infliction of emotional distress by conspiring to discredit and avoid a public and speedy trial.

77. Government defendants acted intentionally to have this case heard in the "court of public opinion" while avoiding an actual, public trial.

78. Waiting over one thousand days (1,000) or three (3) years to go to trial is extreme and outrageous. At trial, witnesses were not present.

79. Plaintiff was denied access to his sixth amendment right and the action was intentional with intentions to create distress.

80. The goal was to continue to cognitively impair Plaintiff until they could be tricked or coerced into signing a plea deal.

81. Government defendants succeeded in impairing Plaintiff by denying his access to a public and speedy trial. Plaintiff suffered an increase in PTSD and ADHD symptoms which impacted daily living.

82. Plaintiff experienced flashbacks, an increase in anxiety, a decrease in cognitive functioning and other difficulties in major life activities as a result of the City of Austin's conduct.

83. Completing tasks, focusing, eating, sleeping and socializing are a few of the symptoms that Plaintiff experienced.

84. Government defendants succeeded in injuring Plaintiff but did not succeed in avoiding a jury trial.

85. Even though a jury trial happened, the shocking conduct was already done. Plaintiff was intentionally denied a public and speedy trial by government defendants as a sinister tactic to intentionally inflict emotional distress in Plaintiff.

86. Plaintiff requests all relief and damages he may be entitled.

## V. DAMAGES

87. Plaintiff suffered and claims the following damages:

Actual Damages

- Past and future mental anguish
- Past and future impairment
- Past and future medical expenses
- Past and future loss of earning capacity
- Past and future physical suffering

## VI. JURY DEMAND

88. Plaintiff respectfully requests jury trial pursuant to FED. R. CIV. P. 48

## VII. PRAYER FOR RELIEF

89. Accordingly, Plaintiff requests that judgment be awarded against Defendant(s) for:

(1) Compensatory damages;

(2) Punitive or exemplary damages;

(3) Costs of Court;

(4) Prejudgment and postjudgment interest at the highest rate allowable under law;

(5) Unliquidated damages at the highest amount that is within the jurisdictional limits of the court;

(6) Any other relief to which Plaintiff is justly entitled.

Respectfully submitted,
/s/Scott Phillip Lewis
Scott Phillip Lewis
1936 Saranac Ave. #3, PMB 411
Lake Placid, NY 12946
518-551-3061
scottphilliplewis@gmail.com